# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

CHRISTOPHER B.,                )
                               )
        Plaintiff     )
                               )
v.                             )      No. 2:17-cv-00502-JAW
                               )
NANCY A. BERRYHILL,            )
*Acting Commissioner of Social Security,*  )
                               )
        Defendant     )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating both certain opinion evidence of record and the plaintiff's testimony regarding his symptoms and limitations. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1. I conclude that neither error occurred. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, Finding 1, Record at 12; that he had the severe impairments of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

degenerative disc disease, carpal tunnel syndrome, depression, anxiety, and polysubstance abuse disorder, Finding 3, *id.* at 13; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with postural, manipulative, environmental, and mental limitations the details of which are not relevant here, Finding 5, *id.* at 16; that, considering his age (45 years old, defined as a younger individual, on his alleged disability onset date, February 20, 2014), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 22; and that he, therefore, had not been disabled from February 20, 2014, his alleged disability onset date, through the date of the decision, December 14, 2016, Finding 11, *id.* at 23-24. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of

the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Evaluation of the Treating Source Opinions

The plaintiff first challenges the ALJ's assignment of limited weight to the opinions of two treating physicians, Alexandra L. Degenhardt, M.D., and Michael MacDonald, M.D., on the basis that the sole rationale provided is unsupported by substantial evidence. *See* Statement of Errors at 4-6. He contends that, as a result, the ALJ failed to supply the requisite good reasons for discounting treating source opinions, warranting remand. *See id.*; *Heath v. Astrue*, No. 1:12-cv-99-DBH, 2012 WL 6913440, at *11 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("[O]nce the [ALJ] [has] determined that [a treating source] opinion [i]s not entitled to controlling weight, [the ALJ] ha[s] discretion to reject it, provided that he supplie[s] 'good reasons' for so doing.") (quoting 20 C.F.R. §§ 404.1527[(c)(2)], 416.927[(c)(2)]). I conclude that the ALJ's explanation is supported by substantial evidence and, therefore, that he supplied the requisite good reasons for his assignment of little weight to the Degenhardt and MacDonald opinions.

In a treatment note dated August 18, 2016, Dr. Degenhardt diagnosed the plaintiff with severe right carpal tunnel syndrome, mild left carpal tunnel syndrome, and severe cervical and shoulder muscle spasms from degenerative disc disease of the cervical spine as well as prior injuries. *See* Record at 853. She prescribed Lyrica for his "severe neuropathic pain with shooting pains into the right arm, both hands, right side of the neck, and right shoulder" and expressed willingness to provide a certificate for medical marijuana to address "his severe pain, as well as muscle spasms[.]" *Id.* She stated:

> Clearly, [the plaintiff] is unable to perform any degree of physical work for employment. He would also be severely limited in anything that flexes the wrists

3

or the elbows, especially on a repetitive basis. He suffers from chronic intractable pain as a result.

*Id.*

Dr. MacDonald submitted a letter dated September 1, 2016, in which he expressed the opinion that the plaintiff was "unable to work at this time due to his significant physiological and psychological impairments[,]" including neck and bilateral shoulder pain and severe bilateral carpal tunnel syndrome. *Id.* at 846. He stated that the plaintiff's shoulder pain "kept him from being able to lift or carry objects of significant weight" and that he had "decreased sensation in his hands secondary to his neck problems as well as severe carpal tunnel syndrome." *Id.*

In an accompanying Physical Impairment Medical Source Statement of the same date, Dr. MacDonald indicated, *inter alia*, that the plaintiff's experience of pain and other symptoms was severe enough to interfere constantly with the attention and concentration needed to perform even simple work tasks, that he could not remain in one position for more than five minutes at a time, could not work an eight-hour day, and could never look up or down and rarely turn his head to the right or left. *See id.* at 848-50.

Turning first to the Degenhardt opinion, the ALJ explained:

> The problem with this assessment is that it is inconsistent with the [plaintiff]'s work activity since the alleged onset date. [He] has worked as a fisherman at least since the alleged onset date of disability. In March of 2014, it was reported that [he] "works in AC refrigeration." The [plaintiff] also goes fishing. I therefore give this opinion limited evidentiary weight.

*Id.* at 20 (citations omitted). He stated that "[f]or the reasons noted above," he also gave the MacDonald opinion limited evidentiary weight. *Id.*

The plaintiff contends that none of the points made by the ALJ is supported by the record citations he supplied. *See* Statement of Errors at 5-6. The commissioner rejoins that the plaintiff focuses too narrowly on those citations, overlooking substantial evidence supporting those points

4

that was cited by the ALJ elsewhere in his decision or not cited by the ALJ at all. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 14) at 3-5.

At oral argument, the plaintiff's counsel disputed the propriety of the commissioner's reliance on evidence never cited by the ALJ. He contended that, in any event, none of the evidence identified by the commissioner provided substantial evidence of what he characterized as the ALJ's rationale for discounting the Degenhardt and MacDonald opinions: that the plaintiff was essentially engaging in full-time work throughout the relevant period.[2]

The commissioner's reliance on evidence of record not cited by an ALJ in support of the ALJ's stated rationale is not improper. "Evidence not cited by an [ALJ] may be relied upon as substantial evidence in support of his or her decision." *Paquin v. Colvin*, No. 1:13-cv-360-JDL, 2014 WL 6679123, at *4 n.5 (D. Me. Nov. 25, 2014) (citations omitted). As counsel for the commissioner noted at oral argument, such reliance does not run afoul of the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), pursuant to which "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) (citation and internal quotation marks omitted).

This leaves the question of whether the evidence on which the commissioner relies constitutes substantial evidence in support of the ALJ's rationale for affording little weight to the

---

[2] The plaintiff's counsel did not dispute the propriety of the commissioner's reliance on the ALJ's citations elsewhere in his decision to relevant record evidence. In any event, as the commissioner observes, *see* Opposition at 3, "it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[,]" *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *see also, e.g., DiPietro v. Colvin*, No. 2:14-cv-203-JHR, 2015 WL 1757244, at *4-5 (D. Me. Apr. 17, 2015) (same).

Degenhardt and MacDonald opinions. The substantial evidence standard does not require that all evidence point toward a single conclusion; instead, it requires that a determination be supported by such relevant evidence as a reasonable mind might accept as adequate to support that conclusion. *Richardson*, 402 U.S. at 401. That test is met here.

As a threshold matter, the plaintiff mischaracterizes the ALJ's finding. The ALJ did not state that the plaintiff had been working essentially full-time throughout the relevant period but, rather, that the Degenhardt and MacDonald opinions were "inconsistent with [his] work activity since the alleged onset date." Record at 20. While he did go on to state that the plaintiff had "worked as a fisherman at least since the alleged onset date of disability[,]" he did not indicate that the plaintiff had done so continuously or full-time, and he noted that the plaintiff had also been reported to have been working "in AC refrigeration" in March 2014. *Id.* (citations and internal quotation marks omitted).[3]

As the commissioner argues, *see* Opposition at 4-5, the record contains substantial evidence that, during the relevant period, the plaintiff did engage in work activity inconsistent with the stringent limitations assessed by Drs. Degenhardt and MacDonald.

For example, elsewhere in his decision, the ALJ cited record evidence standing for the propositions that the plaintiff "'went back to work in construction'" after recovering from a May 5, 2014, C6-T7 fusion surgery, reporting, after seeking emergency room treatment for neck pain, that he had been "operating a drill with his arm raised at a 90 degree angle[,]" *id.* at 17 (quoting *id.* at 615), and was noted in May 2016 to have experienced "worsening weakness and numbness

---

[3] Indeed, the ALJ found that, while the plaintiff had worked during the relevant period, he had not engaged in substantial gainful activity during that time. *See* Finding 2, Record at 12-13. As the commissioner observes, *see* Opposition at 3, relevant regulations provide that, even if a claimant's work during an alleged period of disability is not performed at the substantial gainful activity level, "it may show that [the claimant is] able to do more work than [he or she] actually did[,]" 20 C.F.R. §§ 404.1571, 416.971.

'in both hands during the day when he [wa]s working or at night when he[wa]s sleeping[,]'" *id.* at 17 (quoting *id.* at 706). In addition, the ALJ pointed out that the plaintiff reportedly stated in May 2016 that "'[a]ctivities such as working as a sterman [sic], or power washing a boat produced more pain in the arm and neck.'" *Id.* at 17 (quoting *id.* at 709). Finally, in the context of explaining the weight given to the Degenhardt and MacDonald opinions, the ALJ cited evidence that, in August 2016, the plaintiff had been noted to be "at work on the lobster boat today." *Id.* at 844 (cited at *id.* at 20). This, alone, constitutes substantial evidence in support of the ALJ's finding.[4]

Were more needed, the record includes additional evidence not cited by the ALJ that demonstrates an inconsistency between the limitations assessed by Drs. Degenhardt and MacDonald and the plaintiff's work activities, including the plaintiff's own reports to the agency that he worked as an HVAC technician between July and October 2014, six to eight hours per day, four to five days per week, *see id.* at 317, 349, 352-53, and continued to work as an HVAC technician through mid-December 2014, *see id.* at 349, 354. In addition, the plaintiff reported in January 2016 that he was "barter[ing] for rent with utilities included" by doing odd jobs for his landlord, including painting and carpentry work, *id.* at 719, and stated in July 2016 that "'my pain makes work hard on most days[,]'" *id.* at 822.

---

[4] At oral argument, the plaintiff's counsel disputed that the evidence cited on page 17 of the record stood for the propositions for which the ALJ cited it, stating that (i) the 2014 treatment note at page 615 of the record indicated that the plaintiff had worked in construction for only one day before suffering the injury at issue and ceasing that work, (ii) the May 2016 treatment note at page 706 indicated that the plaintiff had actually been unable to work for some time and was homeless as a result, and (iii) the May 2016 treatment note at page 709 discussed the plaintiff's performance of work in the past tense. The October 2014 note does indicate that the plaintiff ceased working "1 month ago" at the construction job after his injury but does not make clear that he worked for only one day at that job, only that he "went back to work in construction" after his May 2014 "C6-T7 fusion." *See* Record at 615. The first May 2016 note does state that the plaintiff "has had difficulty keeping a job as all the activity seems to worsen his symptoms" and "has been homeless as a result for some time." *Id.* at 706. Yet, it still indicates that the plaintiff had been working. While the second May 2016 note is phrased in the past tense, *see id.* at 709, it reasonably could be read to refer to work performed since the plaintiff's alleged onset date of disability, February 20, 2014. *In toto*, the cited evidence supports the proposition that, during the alleged period of disability, the plaintiff engaged in work activities inconsistent with the limitations assessed by Drs. Degenhardt and MacDonald, albeit not continuously or full-time.

In sum, the ALJ provided the requisite good reasons for according the Degenhardt and MacDonald opinions limited evidentiary weight. Remand, accordingly, is unwarranted on the basis of this point of error.

## B. The ALJ's Evaluation of Plaintiff's Reported Symptoms

The plaintiff also contends that the ALJ ran afoul of the requirements of Social Security Ruling 16-3p ("SSR 16-3p") in three respects in evaluating his testimony regarding his symptoms and limitations. *See* Statement of Errors at 6-8. I find no error.

The plaintiff first asserts that, in assessing his testimony regarding his mental health symptoms, the ALJ failed to consider that "'[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time[,]'" and that this variation "'may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms[.]'" *Id*. at 7 (quoting SSR 16-3p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018), at 672). He points out that the ALJ stated that his mental health systems were "not consistent throughout the record in their severity." *Id*. (quoting Record at 18).

Nonetheless, as the commissioner rejoins, *see* Opposition at 6-7, SSR 16-3p does not *require* that an ALJ adopt this possible explanation for variation in a claimant's symptoms, *see* SSR 16-3p at 672. The ALJ did not err in failing to do so here: he detailed compelling reasons, apart from the variability of the plaintiff's mental health symptoms, why he declined to accept his testimony as to their severity and functional effects, *see* Record at 18, none of which the plaintiff challenges, *see* Statement of Errors at 7-8.[5]

---

[5] These included that the plaintiff's depression had been characterized as mild, he appeared to use mental health services in order to connect with community resources and had a "very spotty" record in appearing for mental health appointments, his mental health symptoms had been noted in conjunction with difficulties in his environment, and he

8

The plaintiff next argues that the ALJ drew a prohibited negative inference regarding his "'overall character []or truthfulness'" on the basis of his testimony regarding his substance abuse, in violation of SSR 16-3p. *Id*. (quoting SSR 16-3p at 674). He points out that the ALJ stated that his records "'note that he has a history of opiate abuse'" and that, after he had denied the use of any substances, including THC, a urine screen tested positive for THC in January 2016. *Id*. at 7 (quoting Record at 18).

However, the ALJ made those observations in the context of assessing the plaintiff's statements regarding his polysubstance abuse disorder, which he had deemed a severe impairment. *See* Record at 18; *see also* Finding 3, *id*. at 13. He made no finding regarding the plaintiff's overall character or truthfulness either in that paragraph-long discussion or in summarizing his conclusions regarding the plaintiff's testimony. *See id*. at 18-19.

The plaintiff next contends that, in violation of SSR 16-3p, the ALJ "erroneously evaluated [his] testimony on the basis that his symptoms and limitations were not fully proven by objective evidence and he did not seek medical treatment to the extent the ALJ thought would be expected based upon his testimony, without considering possible reasons for the lack of additional treatment evidence[.]" Statement of Errors at 8.

As the commissioner observes, *see* Opposition at 9, SSR 16-3p provides that an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual[,]" SSR 16-3p at 741 (emphasis added). The ALJ did not do so here. He noted that, "[d]uring his hearing, the [plaintiff] emphasized that because of his conditions he suffers constant, catastrophic pain[,]" that "his hand pain is so severe

---

had told practitioners that he was applying for benefits due to physical problems. Record at 18 (citation and internal quotation marks omitted).

that he cannot even use a pen for more than 3-4 minutes[,]" and that "he hides out in his apartment all day." Record at 16-17 (citation and internal quotation marks omitted). However, he concluded that the "[plaintiff's] statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence *and other evidence* in the record for the reasons explained in this decision." *Id.* at 17 (emphasis added).

That other evidence included opinions of two agency nonexamining consultants and an agency examining consultant that the ALJ afforded great weight, *see id.* at 19-21, and inconsistencies between the plaintiff's allegations and reported activities; for example, that, despite his allegations of marked social limitations and overwhelming pain, he reportedly had been going to the gym and playing sports, had interviewed for a job as a car salesman, and had been working, going fishing, and power washing a boat, *see id.* at 19.

The ALJ did not err in relying *in part* on a lack of corroborating objective medical evidence. *See id.* at 17-18 (discussing objective evidence concerning the plaintiff's degenerative disc disease and carpal tunnel syndrome and scores on PHQ questionnaires pertaining to mental symptoms). To the contrary, as the commissioner points out, *see* Opposition at 9, SSR 16-3p describes objective medical evidence as "a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities[,]" SSR 16-3p at 741.

Finally, while SSR 16-3p directs that ALJs will "consider[] possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints[,]" SSR 16-3p at 745, the plaintiff identifies no evidence of any reason(s) for failure to seek treatment that the ALJ ignored, *see* Statement of Errors at 7-8.

The plaintiff, hence, falls short of demonstrating his entitlement to remand on the basis of the ALJ's evaluation of his reported symptoms.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of November, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge